# AGREEMENT FOR USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

DATED:

BETWEEN:   A.A.A. Bowls Unlimited Inc., dba Skyway Park Bowl and Casino

and

CML Loan Fund II, LLC successor in interest to Ciena Capital, LLC

## I.  RECITALS

      A.    **Operation of Business.**  A.A.A. Bowls Unlimited Inc., dba Skyway Park Bowl and Casino ("Debtor") operates an entertainment facility in Renton, Washington comprised of a casino, bowling alley, restaurant and lounge known as Skyway Park Bowl and Casino (the "Business").  The Pardey Limited Partnership ("PLP") leases certain real property commonly known as 11819 Renton Avenue South, Seattle, Washington (the "Real Property") to Debtor and it is at this location that Debtor operates the Business.

      B.    **Bank Debt.**

      1.    **Existing Security Interest**.  Debtor and PLP have borrowed money from CML Loan Fund II, LLC successor in interest to Ciena Capital, LLC ("CML"), pursuant to a promissory note dated February 12, 2007 in the principal sum of $3,070,000 ("Note").  The Note is secured by a Deed of Trust and assignment of rents to and for the Real Property granted by PLP to CML.  The Note is also secured by a security agreement executed by Debtor granting a security interest to CML in the personal property of Debtor, including but not limited to equipment, inventory, accounts, chattel paper, furniture, fixtures, contract rights, general intangibles and proceeds therefrom (the "Personal Property" and with the Real Property is collectively known as the "Existing Collateral").  The Deed of Trust was recorded in the King County records under recording number 20070214000414.  The security interest in the Personal Property was properly perfected by CML by filing a UCC-1 financing statement with the Washington State Department of Licensing under recording number 2007-044-9393-5.  The Note, security agreement, financing statement, and other loan documents executed by Debtor and delivered to CML are referred to collectively in this Agreement for Use of Cash Collateral and Adequate Protection ("Agreement") as the "Existing Loan Documents".

      2.    **The Existing Collateral.**  Debtor agrees that CML holds valid, attached, perfected, choate, and enforceable security interests in and liens upon all property described in the Existing Loan Documents, including, but not limited a first Deed of Trust on the Real Property described therein, a first lien in the assignment of rents and a first lien in the Personal Property, exclusive of any leased property and the lien on Parcel C of the Real Property held by Chesterfield Mortgage Investors, Inc., ("Chesterfield").

**3.     Existing Indebtedness**.   As of September 22, 2008, Debtor was indebted to CML pursuant to the Note in the total sum of $3,249,744.92, including principal of $3,064,220.37, interest of $147,253.15, late fees and costs of $11,127.20 and attorneys fees and costs of $27,144.00.  Interest continues to accrue at a rate of $829.04 per day.  The total amount of principal, interest, late fees and costs and attorney fees and costs owed by Debtor to CML is referred to herein as the "Existing Indebtedness".

**C.     Chapter 11 Bankruptcy Case.**  Debtor has filed a petition under Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Western District of Washington on September 18, 2008 under cause number 08-16096 ("Petition Date").

**D.     Work-out.**  Debtor is in the process of negotiating a work-out.  CML has elected to allow Debtor an additional period of time through February 28, 2010 in order to determine if an agreement can be reached.

**E.     Use of Cash Collateral.**

**1.     Need for Use of Cash Collateral.**  As used herein, "Cash Collateral" shall mean cash collateral as defined in 11 U.S.C. § 363(a), in which CML has an interest.  All inventory, accounts, equipment, chattel paper, rents, and general intangibles and other assets of Debtor that are acquired or arise after the Petition Date will be either the direct or indirect result of the use of the Existing Collateral.  Debtor has no funds for the operation of the Business or for the orderly sale of its assets other than from the use of Cash Collateral.  In order to operate the Business and to sell its assets pending confirmation of the Plan, Debtor has an immediate need to use the Existing Collateral.  Debtor will suffer immediate and irreparable harm if it is not immediately permitted to use the Existing Collateral pursuant to the terms of this Agreement.  This Agreement is intended to allow Debtor to use the Existing Collateral as set forth herein only to the extent necessary to avoid immediate and irreparable harm to Debtor.  This Agreement remains subject to approval by the Bankruptcy Court on shortened time as provided by the Federal Rules of Bankruptcy Procedure.

**2.     Current Available Cash Collateral.**  Debtor currently has approximately _____ in deposits in Banner Bank Account No. ending in 3713 (the "Cash Collateral Account").  Debtor currently holds approximately $_____ in undeposited Cash Collateral.  Except for sums described in this paragraph and the sums deposited in the Tax Account and the Property Tax Account, (as such terms are defined in sections 2.1 herein), Debtor has no other Cash Collateral.

**3.     No Other Source of Funding.**  Debtor has evaluated alternative sources of financing and has made all reasonable efforts under the circumstances to secure financing.  Debtor remains unable to obtain the funds required to operate since the Petition Date from any source other than CML on any terms more favorable than those set forth in this Agreement.  CML is unwilling to consent to the use by Debtor of the Existing Collateral, except as provided in this Agreement.

**4.     Use Consistent with Code.**   Debtor does not intend to use CML's Existing Collateral for any purpose not permitted by the Bankruptcy Code.


## II. TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, Debtor and CML agree as follows:

**1.     Court Approval of this Agreement.**  It is a condition precedent to the parties rights and obligations hereunder that a Bankruptcy Court order is entered approving this Agreement (the "Order").  Until the Order is entered, expenditure of Cash Collateral authorized by this agreement is limited to the amount necessary to avoid immediate and irreparable harm to the estate.  If the Bankruptcy Court sustains any objections to this Agreement, Debtor's authority to use Cash Collateral hereunder shall immediately terminate, but CML nonetheless shall be entitled to the benefits of this Agreement with respect to Cash Collateral used through the date the objection is sustained.

**2.     Use of Cash Collateral.**  The budget attached hereto as Exhibit A shall constitute the budget for the period February 1, 2010 through February 28, 2010 (the "Budget").  CML consents to Debtor's use of Cash Collateral in the ordinary course of Debtor's Business only to the extent set forth in the Budget and on the terms contained herein through the month of February 2010 only.  Any use of Cash Collateral beyond February 28, 2010 shall require a new, separate agreement.

**2.1     Cash Collateral Account.**  Except for the segregated US Bank account established for King County gambling tax deposits (the "Tax Account") and the segregated US Bank account established for King County property tax deposit (The "Property Tax Account"), Debtor shall maintain all of its bank accounts exclusively with Banner Bank.  The Cash Collateral Account is designated as the depository for all of Debtor's cash.  Debtor shall deposit when received (with proper endorsement if necessary) all money, checks, notes, refunds, drafts and rights to payment previously or hereafter received by Debtor, whether from the operation of the Business or the liquidation or sale of Personal Property securing all or any part of the Existing Indebtedness into the Cash Collateral Account.  Debtor shall not, under any circumstances or at any time, withhold any money, checks, notes, refunds, drafts and rights to payment from deposit other than to maintain the amount necessary for its normal business operations and required by WAC 230-15-050.

**2.2     Budget.**  Debtor may revise the Budget, but only with the consent of CML and approval by the Bankruptcy Court amending the Order.  An Event of Default shall be deemed to have occurred if Debtor's actual expenditures for any line item in any month exceeds 120 percent of its budgeted expenditures for that line item for that month, or if its actual aggregate expenditures for any month exceed 110 percent of its budgeted aggregate expenditures for that month.  It shall also be an Event of Default if Debtor's actual income for any one-month period is less than 90 percent of that projected in the Budget.  In the event the parties cannot

agree upon a budget or an increased budget, then the dispute may be presented to the Bankruptcy Court on three days notice.

        **2.3**    **Payments from Account.** Debtor may use funds in the Cash Collateral Account to make expenditures in the monthly amounts specified in each line item of the Budget. However, Debtor shall not draw any item on the Cash Collateral Account unless such item is in conformance with the Budget, the Bankruptcy Code, and this Agreement, and there are sufficient funds in the Cash Collateral Account to pay such item. All Cash Collateral that Debtor is authorized to use hereby shall remain Existing Collateral or Additional Collateral (defined in section 3.2 herein) until Debtor uses such Cash Collateral.

        **2.4**    **Termination of Authority to Use Cash Collateral.**

            **2.4.1**    **Time of Termination.** Debtor's authority to use Cash Collateral shall expire at the earliest of:

            **a.**    **February 28, 2010** or such date as any creditor receives relief from the automatic stay following entry of the Order;

            **b.**    The timely filing of any (i) notice of appeal of the Order, (ii) motion for leave to appeal the Order, (iii) motion to extend the time to file a notice of appeal or motion for leave to appeal the Order, or (iv) motion to alter or amend the Order, whether or not the Order is stayed; or

            **c.**    The occurrence of an Event of Default (as defined in section 6.1 herein).

        **3.**    **Adequate Protection.**

        **3.1**    **Monthly Protection Payments.** On or before February 22, 2010, Debtor shall pay to CML the sum of not less than $5,000 (the "Protection Payments") and not less than $10,000 on or before March 22, 2010. Debtor shall make such Protection Payments to CML in lieu of paying to PLP monthly lease payments for the Real Property. CML will apply the Protection Payments in order of unpaid interest, fees and costs, accrued pre-petition principal and accrued post-petition principal. No monthly lease payment shall be paid to PLP, except that Debtor may pay to PLP the sum of $2,500 per month, which is to be used to pay the monthly note payments due to Chesterfield, which is secured by the Real Property.

        Debtor shall make the Protection Payments to CML by wire transfer on or before the deadlines specified herein as follows:

        The Private Bank and Trust Company
        Chicago, Illinois
        ABA # 071006486
        Acct. #3134696

Acct. Name:  CML Loan Fund II, LLC

**3.2** **Replacement Liens.**  CML shall be granted adequate protection liens pursuant to 11 U.S.C. § 361(2) ("Replacement Liens") on all post-petition assets of the same class as those in which CML had a valid and properly perfected unavoidable pre-petition security interest or lien ("Additional Collateral").  These Replacement Liens shall secure the amount of any diminution in the value of such allowed secured claims of CML as of the Petition Date, resulting from Debtor's use of Cash Collateral, and shall have the same priority as the allowed secured claim of CML as of the Petition Date.  In the event these Replacement Liens do not secure the amount of any diminution in the value of such allowed secured claims of CML as of the Petition Date, CML shall be entitled to an administrative priority claim pursuant to 11 U.S.C. § 507(a)(1) and (b).

**3.3** **Insurance.**  Debtor shall at all times keep the Existing Collateral and Additional Collateral insured with one or more insurance companies as required by the Existing Loan Documents.  Debtor shall name CML as loss payee and additional insured for such insurance policy.  Debtor shall immediately provide to CML a copy of the insurance policy and endorsement evidencing that CML is named as loss payee and additional insured.

**3.4.** **Payment of Taxes.**

**a.** **Gambling Taxes.**  On or about January 31, 2010, Debtor shall pay from the Tax Account the balance of the fourth quarter gambling taxes due to King County. Thereafter, Debtor shall deposit into the Tax Account an amount equal to the gambling tax due for January 2010 and shall pay such sum to King County from the Tax Account on or before the last business day of January 2010.

**b.** **Personal Property Taxes.**  Debtor shall make monthly deposits into the Property Tax Account for sums due for King County personal property taxes on or before 12 noon on the last business day of each month in an amount equal to the pro rata portion of the personal property tax due for the preceding month.

**3.5** **Relief from Stay.**

Nothing herein shall be construed as a reimposition of the stay against CML or the invalidation of the Order for Relief from Stay in favor of CML dated September 25, 2009, which is effective as to Debtor's Business, the Real Property and the Personal Property.

**3.6** **Compliance with Washington State Gambling Commission.**

Debtor shall comply with all Washington state gambling statutes and regulatory and administrative provisions in existence in the state of Washington and or enforced by the Washington State Gambling Commission.

**3.7 Inspection and Appraisal.** CML and its authorized representatives shall have the right to inspect and copy any of Debtor's books and records and any books and records of PLP. In conjunction with this right, CML's representative Stardust Marketing, LLC shall conduct an onsite inspection of Debtor's Business upon entry of this Order and shall remain onsite at Debtor's Business until the earlier of termination of this Agreement or CML's election to no longer have Stardust Marketing, LLC onsite. CML's inspection rights hereunder shall be in addition to all of CML's rights to inspect its Existing Collateral under the Existing Loan Documents.

CML shall have the right to have an appraisal of the Existing Collateral. Any such appraisal shall take place during ordinary business hours and shall not unduly interfere with the operation of Debtor's Business. CML shall give Debtor reasonable notice before having such an appraisal conducted, provided that such notice shall be not less than 24 hours.

Debtor shall also furnish or cause to be furnished to CML and its authorized representatives all such information as Debtor possesses with respect to its operations and with respect to PLP, including but not limited to current and historical operating records, and shall identify to CML and its authorized representatives such individuals in addition to Debtor's principals, who may have possession, control or knowledge of information with respect to such records and with respect to Debtor's operations and with respect to PLP.

**3.8 Adequate Protection.** Nothing contained in this Agreement shall be deemed an agreement regarding adequate protection, as defined in §361 of the Code, of CML's interests. This Agreement is without prejudice to CML's right at any time to seek to modify, vacate or terminate the automatic stay in effect under §362 of the Code or to seek such adequate protection of its interest.

**4. Affirmative Covenants.**

**4.1 Bankruptcy Code Compliance.** Debtor shall comply with all rules or requirements contained in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules of the Court, and Debtor shall comply with all orders of the Bankruptcy Court.

**4.2 Reporting Requirements.**

**4.2.1 Weekly Financial Reports.** Commencing January 6, 2010 and on or before 12 noon on each successive Wednesday of each week thereafter, Debtor shall provide to CML and the Official Unsecured Creditors' Committee, in care of their attorneys at the address in section 8.2 herein, the following information:
    **a.** Cash income for the prior week and for the period since the Petition Date;

    **b.** Cash expenditures by Budget line items for the prior week and for the period since the Petition Date;

**c.** A copy of Debtor's check registers; showing all checks written by Debtor during the week ending on the preceding Friday. Each check listed in such register shall be identified by check number, date, payee, amount, and Budget category.

**4.2.2** **Monthly Financial Reports.** Commencing January 6, 2010 and on or before 12 noon on the second Wednesday of each month thereafter, Debtor shall provide to CML and the Official Unsecured Creditors' Committee, in care of their attorneys at the address in section 8.2 herein, a report containing the following information:

**a.** A comparison of actual monthly and cumulative income and expenditures by line item to Budgeted monthly cumulative income and expenditures by line item;

**b.** The monthly balances for the Cash Collateral Account and any other bank account or accounts held by Debtor;

**c.** A copy of Debtor's Tax Account bank statement;

**d.** A copy of Debtor's Property Tax Account bank statement;

**e.** A list of all Debtor's leases, including the name of the lessor, the total amount owed on each lease, the monthly payment due for each lease and the amount of any pre and/or post petition deficiency;

**f.** A list of all payments made for the month to Debtor's insiders as that term is defined in 11 U.S.C. § 101(31) and to Debtor's affiliated entities.

**g.** Any and all information regarding CML's Existing Collateral that is requested by CML.

**4.2.3** **United States Trustee Financial Reports.** On or before the 15th day following each month ending after the date hereof, Debtor shall deliver to CML and the Official Unsecured Creditors' Committee, in care of their attorney at the address in section 8.2 herein a copy of the monthly operating reports to be prepared by Debtor for the United States Trustee.

**4.2.4** **Purchase Offers.** Debtor shall deliver copies of any and all purchase offers for (1) the Personal Property, (2) any part of Debtor's Business operations and/or (3) the Real Property to counsel for CML and to counsel for the Official Unsecured Creditors Committee as soon as such offers are received.

**4.2.5** **Default of Reporting Requirements.** For the purposes of determining whether an Event of Default has occurred by reason of a breach or default under paragraph 4.2 of this Agreement ("Reporting Requirements"), an Event of Default under the Reporting Requirements shall not be deemed to have occurred if (i) Debtor has delivered to CML and the Official Unsecured Creditors' Committee information that Debtor believes

complies with the Reporting Requirements; or (ii) within five days written notice from CML or the Official Unsecured Creditors' Committee of noncompliance with the Reporting Requirements, Debtor provides CML and the Official Unsecured Creditors' Committee with full, complete, and accurate information that fulfills the Reporting Requirements.

  **4.4**  **Verification.** CML hereby is authorized to verify financial information and other information that Debtor supplies to CML. In that regard, CML, among other things, is authorized to contact third parties, including but not limited to Debtor's account debtors, account creditors and accountants, to verify information provided to CML.

  **4.5**  **Employee Compensation.** Debtor shall timely pay all of its employees, in accordance with its agreements with such employees and all applicable law, and shall also pay all payroll and other taxes imposed on it with respect to its employees. It shall specifically constitute an Event of Default hereunder if Debtor employs any person when it will be unable to pay such person the required compensation or any taxes with respect thereto. Debtor shall not pay principal David Pardey more than $2,900 per month and shall not pay any other relative of David Pardey, including but not limited to his spouse or sibling, or pay any insider of the Debtor as that term is defined in 11 U.S.C. .§ 101(31) without further order of the Court.

  **4.6**  **Pleadings.** Debtor shall provide CML with copies of all pleadings filed in this case, except proofs of claim, that do not evidence service on CML or its counsel.

  **4.7.**  **Priority in Accordance with Section 507(b).** CML shall be afforded all of the protections of Section 507(b) of the Code.

  CML agrees that the sum of $40,000 of its Cash Collateral may be set aside for the payment of professional fees incurred by counsel for the Official Unsecured Creditors Committee, counsel for Debtor and any other professionals whose employment is approved by the Court (the "Carveout"). Even if the funds for the Carveout have not been set aside prior to an Event of Default or termination of Debtor's authority to use Cash Collateral, the right to the Carveout shall survive and shall be paid from Cash Collateral or other Existing Collateral. The Carveout, however, shall not constitute a Section 506(c) surcharge against CML, but shall merely constitute a further use of CML's Cash Collateral entitling CML to the adequate protection provisions contained in section 3 herein.

  **4.8**  **Bank Meetings.** Debtor shall meet with CML on reasonable notice, at reasonable times, and at reasonable intervals to inform CML of the status of the bankruptcy case.

 **5.**  **Negative Covenants.** Unless otherwise ordered by this Court during the term of this Agreement, Debtor shall not:

  **5.1**  Engage in any transaction which is not in the ordinary course of its business, including, without limitation, any sale, lease, exchange, collection or other disposition of any Cash Collateral or other Existing Collateral;

  **5.2**  Engage in a new or different business, or change the Business address;

**5.3** Increase its investment, whether by purchase, lease, or otherwise, in fixed or capital assets;

**5.4** Extend credit to any person who is not creditworthy or any person who owes a debt to Debtor that is past due. Debtor shall take appropriate collection action against all persons who owe past-due debts to Debtor;

**5.5** Except for credit obtained in the ordinary course of business, obtain credit without the written consent of CML and without the entry of a Bankruptcy Court order following written notice to CML and opportunity for a hearing as is appropriate in the particular circumstances;

**5.6** Create, assume or suffer to exist any lien or security interest in any Cash Collateral, the Existing Collateral or Additional Collateral in favor of any person other than CML except:

    i.    Any lien or security interest existing as of the date of the entry of this Agreement; and

    ii.    Any liens expressly consented to in writing by CML;

and

**5.7** Pay any expenses except as authorized by the terms of this Agreement and as reflected on the Budget.

6. **Default and Consequences of Default.**

**6.1** **Event of Default.** Any one of the following events shall constitute an Event of Default hereunder:

    **a.**    Failure to pay monthly post petition expenses, including but not limited to all federal, state and local taxes and failure to pay employee compensation as provided in section 4.5 herein;

    **b.**    Failure to make monthly deposits into the Tax Account and the Property Tax Account;

    **c.**    Failure to make a payment to CML when due as required hereunder;

    **d.**    Failure by Debtor to comply with the Budget requirements contained in section 2.2 herein;

    **e.**    Entry of an order terminating Debtor's authority to use Cash Collateral;

**f.** Any finding by CML's representative, Stardust Marketing, LLC, that Debtor has misappropriated or converted the Existing Collateral or the Additional Collateral;

**g.** Announcement from the bench or entry of an order or judgment holding any material provision of this Agreement invalid or unenforceable; or

**h.** Entry of an order dismissing Debtor's bankruptcy case, appointing a Trustee or converting Debtor's bankruptcy case to a Chapter 7 proceeding.

**6.2** **Consequences of Default.**

**a.** If an Event of Default arises under section 6.1, Debtor's right to use Cash Collateral immediately terminates as provided in section 2.4 herein.

**b.** If an Event of Default arises under section 6.1 a., 6.1 b., 6.1 c. 6.1 d., 6.1 e., 6.1 f., 6.1 g., 6.1 h or 6.1 i, herein, Debtor agrees that CML may file the Stipulation to Appointment of General Receiver ("the Stipulation") attached as Exhibit A and incorporated herein by this reference upon service of a Notice of Default and the expiration of 24 hours following the Notice of Default. Notice shall be served by email on counsel for Debtor, the Unsecured Creditors Committee, Chesterfield, King County, Washington State and the Hatches. Once the Stipulation is filed and an Order is entered appointing a Receiver in accordance with the Stipulation, CML shall notify the Bankruptcy Court of the appointment so that the Court may enter an order for converting Debtor's case to a Chapter 7 proceeding.

**6.3** **Non-Consensual Use of Cash Collateral**. Nothing in this Agreement shall prevent Debtor from seeking a Bankruptcy Court order authorizing Debtor to use Cash Collateral regardless of whether Debtor's authority to use Cash Collateral has terminated pursuant to this Agreement.

**7.** **Payments from Existing Collateral and Additional Collateral.** Counsel for Debtor and Counsel for the Official Unsecured Creditors' Committee and any other professionals whose employment is approved by the Court shall be entitled to payment from CML's existing Collateral and Additional Collateral only on the following terms:

**a.** A Bankruptcy Court order approving the fees and costs as reasonable under applicable sections of the Bankruptcy Code shall have been entered; and

**b.** Counsel for Debtor shall be entitled to payment first from their pre-petition retainer (or such portion thereof that remains unused as of the Petition Date) to the extent approved by the Bankruptcy Court.

**8.** **General Provisions.**

**8.1** **Time of the Essence.** Time is of the essence in this Agreement.

**8.2** **Notices.**  Any notices required or permitted to be given under the terms of this Agreement or by law shall be in writing and may be given by personal delivery, certified mail, facsimile or email directed to the parties as follows:

|  |  |
|---|---|
| If to CML: | CML Loan Fund II, LLC<br>853 N. Elston<br>Chicago, IL 60642<br>Attn: Bennet Schwartz<br>(312) 433-0555 (Fax)<br>BSchwartz@JDIREALTY.COM |
| with a copy to: | FOSTER PEPPER PLLC<br>1111 Third Avenue, #3400<br>Seattle, WA  98101<br>Attn: Deborah A. Crabbe<br>(206) 447-5325 (Fax)<br>crabd@foster.com |
| If to Debtor | A.A.A. Bowls Unlimited Inc., dba Skyway Park Bowl and Casino<br>11819 Renton Avenue S.<br>Renton, WA  98178<br>Attn: David Pardey<br>(206) 772-9860 (Fax) |
| with a copy to: | LAW OFFICES OF JEFFREY B. WELLS<br>502 Logan Building<br>500 Union Street<br>Seattle, WA  98101<br>Attn: Jeffrey B. Wells<br>(206) 624-0086 (Fax)<br>eajbwellaw@aol.com |
| If to Official Unsecured Creditors Committee: | RYAN SWANSON & CLEVELAND, PLLC<br>1201 Third Avenue, Suite 3400<br>Seattle, WA 98101-3034<br>Attn: Timothy W. Dore<br>206.621.7568 Facsimile<br>dore@ryanlaw.com |

Except as provided in section 6.2.b., any notice given shall be effective when actually received or, if given by certified mail, then 48 hours after the deposit of such notice in the United States mail with postage prepaid.

**8.3** **Waiver.** Debtor and/or CML may waive any or all provisions of this Agreement provided such waiver is in writing and a copy of such waiver is provided to the non waiving party. A waiver of any right arising out of a breach of any covenant, term, or condition of this Agreement shall not be a waiver of any right arising out of any other or subsequent breach of the same or any other covenant, term, or condition of this Agreement or a waiver of the covenant, term, or condition itself.

CML may decline to exercise any or all of the rights or remedies available to it hereunder or otherwise. A decision by CML not to exercise any such right or remedy shall not constitute a basis for Debtor or any third party to assert that CML has waived in any way the right to insist upon strict compliance by Debtor or the bankruptcy estate with the terms of this Agreement. Nothing contained in this Agreement shall be interpreted as a waiver by CML of any of its rights under the Existing Loan Documents or in and to the Existing Collateral.

**8.4** **No Limitation of Rights.** Nothing in this Agreement shall be interpreted to limit the right of CML to apply to the Bankruptcy Court for a modification of this Agreement on any appropriate ground or to limit the right of CML to seek relief from the automatic stay pursuant to 11 U.S.C. § 362, conversion of this case to chapter 7, dismissal of this case, termination of or objection to Debtor's present or future authority to use Cash Collateral, appointment of a trustee or any other relief provided for under the Existing Loan Documents and at law.

**8.5** **No Commitment for Future Financing.** Debtor acknowledges and agrees that nothing in this Agreement constitutes a commitment by CML to provide any future funding to Debtor or to allow additional use of Cash Collateral, other than as provided herein, without an order of the Bankruptcy Court.

**8.6** **Captions.** The captions hereof are inserted only for convenience and are not part of this Agreement nor a limitation on the scope of the particular paragraph to which each refers.

**8.7** **Severability.** If any provision of this Agreement is held to be invalid or unenforceable, all other provisions nevertheless shall continue in full force and effect.

**8.8** **Debtor's Agreement Not Binding on Other Parties Except as Provided in Bankruptcy Court Order.** Debtor's covenants in this Agreement with respect to the perfection and priority of CML's security interest in Existing Collateral shall not be binding on the bankruptcy estate or any other party in interest in the bankruptcy case, except as expressly provided in the Bankruptcy Court Orders approving this Agreement.

**8.9** **No commitment to further use of Cash Collateral or Waiver of Rights.** **ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, TO EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed, effective as of the date first written above.

**AAA Bowls Unlimited Inc., dba**                                      **CML Loan Fund II, LLC**
**Skyway Park Bowl and Casino**

By: _____              By: _____
      _____, _____                          _____, _____